134 F.3d 1321
 RICO Bus.Disp.Guide 9415
 Verna EMERY, on behalf of herself and all others similarly
situated, Plaintiff-Appellant,
v.
AMERICAN GENERAL FINANCE, INC., American General Finance
Corporation, and John Does 1-10, Defendants-Appellees.
 No. 97-1546.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 9, 1997.
Decided Jan. 28, 1998.
Rehearing and Suggestion for Rehearing En Banc Denied Feb. 24, 1998.
 
 Daniel A. Edelman, Cathleen M. Combs (argued), James O. Latturner, Linda Y. Sherif, Edelman & Combs, Chicago, IL, for Plaintiff-Appellant.
 James R. Daly (argued), Robert C. Micheletto, Jayant W. Tambe, Jones, Day, Reavis & Pogue, Chicago, IL, for Defendants-Appellees.
 Before POSNER, Chief Judge, BAUER and COFFEY, Circuit Judges.
 POSNER, Chief Judge.
 
 
 1
 This is the second coming of a case that we remanded to the district court, 71 F.3d 1343 (7th Cir.1995), which had granted a motion to dismiss the case, a class action suit under RICO, 18 U.S.C. §§ 1961 et seq., for failure to state a claim, on the ground that the only predicate act alleged, a mail fraud, was not fraudulent. The alleged fraud was "loan flipping," in which a lender offers to refinance the borrower's existing loan on advantageous terms, concealing the fact that the terms are in fact highly disadvantageous. We held that the letter that a subsidiary of one of the corporate defendants (we'll refer to the corporate defendants in the aggregate as AGF) mailed to the named plaintiff, Emery, was sufficiently misleading to make out, in conjunction with the allegations of the complaint, a violation of the mail fraud statute. And so we reversed. But we noted that the RICO statute requires that a plaintiff prove at least two separate criminal acts, and that the complaint in this case, while alleging that the defendants had perpetrated the same fraud on other customers, gave no particulars, and so fell afoul of Fed.R.Civ.P. 9(b). But we thought that the suit should not be dismissed without giving the plaintiff a chance to replead, and on remand the district judge did this. The plaintiff filed a first amended complaint, which the judge again dismissed, and a second amended complaint, which he also dismissed, and this time he dismissed the suit and the plaintiff has appealed.
 
 
 2
 The judge ruled that the second amended complaint still failed to comply with Rule 9(b) and also failed to allege the conduct of an enterprise's activity through a pattern of racketeering, 18 U.S.C. § 1962(c), consisting of mail fraud. We think both grounds for the dismissal of the suit are correct, and while it is possible that the deficiencies of the complaint could be cured by further pleading, the plaintiff has had three chances over the course of three years to state a claim and the district judge was not required to give her another chance. General Electric Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1085 (7th Cir.1997); Word of Faith World Outreach Center Church, Inc. v. Sawyer, 90 F.3d 118, 124 (5th Cir.1996).
 
 
 3
 The second amended complaint names three more "victims." Unfortunately, the plaintiff's lawyer has not been able to find the letters that AGF sent to two of them and as to the third, the only solicitation the lawyer has come up with is an innocuous couple of sentences in the monthly loan statement that AGF sent this "victim"; moreover, as the statement carries the same date as the refinancing, it could not have caused this "victim" any harm. All we know about the other two victims is that they were borrowers from AGF who refinanced their loans on disadvantageous terms at some unknown time after receiving letters "substantially similar" to the one that the named plaintiff received. The letters, mailed more than a year after the letter to Emery that kicked off this suit (indeed mailed after the suit was commenced), could be "substantially similar" yet not misleading or actionable, especially as there is no allegation that the recipients were unsophisticated, a factor emphasized in our previous opinion.
 
 
 4
 We are mindful of the difficulty that a plaintiff's lawyer can encounter in trying to gather enough evidence of multiple frauds in advance of filing suit to satisfy the requirements of Rule 9(b), especially in a RICO fraud case, where the plaintiff needs to allege more than one fraud, and thus satisfy Rule 9(b) as it were twice. The two additional victims received their solicitation letters years ago and obviously didn't keep them; and it is apparent that neither do they remember the contents of the letters with any specificity. No doubt other customers of AGF received the same or materially the same letter as Emery; but whether they were deceived is another matter, and one on which the complaint sheds no light. If when this suit was filed in 1994 the plaintiff's lawyer had appreciated the need to plead two mail frauds with the particularity required by Rule 9(b), as she should have, she could have scouted around and found other recipients of the form letter. Having waited three years, she may have put herself in a position where it simply was too late to satisfy the conjoint requirements of RICO and 9(b). In any event, the allegations regarding the two additional victims, lacking as they do any identification of the allegedly fraudulent instruments, do not satisfy the requirements of Rule 9(b). Jepson, Inc. v. Makita Corp., 34 F.3d 1321, 1328-29 (7th Cir.1994); Graue Mill Development Corp. v. Colonial Bank & Trust Co., 927 F.2d 988, 992-93 (7th Cir.1991); Ahmed v. Rosenblatt, 118 F.3d 886, 889 (1st Cir.1997).
 
 
 5
 We don't want to create a Catch-22 situation in which a complaint is dismissed because of the plaintiff's inability to obtain essential information without pretrial discovery (normally of the defendant, because the essential information is in his possession and he will not reveal it voluntarily) that she could not conduct before filing the complaint. But Rule 9(b) is relaxed upon a showing of such inability. Katz v. Household Int'l, Inc., 91 F.3d 1036, 1040 (7th Cir.1996); In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1418 (3d Cir.1997); Kowal v. MCI Communications Corp., 16 F.3d 1271, 1279 n. 3 (D.C.Cir.1994); Devaney v. Chester, 813 F.2d 566, 569 (2d Cir.1987). In fact the plaintiff in this case attempted to conduct discovery after she filed her initial complaint, and discovery was stayed upon the defendants' motion. Rule 9(b) is satisfied by a showing that further particulars of the alleged fraud could not have been obtained without discovery. The plaintiff did not make that showing. Her lawyer admits that she didn't explore the possibility of obtaining from the defendants or other sources, without discovery, the identity of other recipients of the form letter that her client received, and as we said her failure at the outset to appreciate the requirements of Rule 9(b) may in conjunction with the passage of time have doomed any efforts to find a second victim of the fraud.
 
 
 6
 Several months ago we decided Fitzgerald v. Chrysler Corp., 116 F.3d 225 (7th Cir.1997), another RICO case brought by the law firm that represents the plaintiff in this case. The misunderstanding of RICO that defeated the firm there persists in the present appeal. The plaintiff's lawyer continues despite Fitzgerald to believe that the requirement in a case such as this of proof that defendants conducted the affairs of an enterprise through a pattern of racketeering activity, 18 U.S.C. § 1962(c), is satisfied merely by showing that the pattern of predicate acts (the mail frauds, in this case) were committed by a firm that has agents or affiliates. That is not enough. The firm must be shown to use its agents or affiliates in a way that bears at least a family resemblance to the paradigmatic RICO case in which a criminal obtains control of a legitimate (or legitimate-appearing) firm and uses the firm as the instrument of his criminality.
 
 
 7
 The second amended complaint alleges that American General Corporation is a holding company and its wholly owned subsidiary, American General Finance Corporation (AGFC), is engaged in the consumer lending business. AGFC in turn is the sole owner of defendant American General Finance, Inc. (AGFI), an Illinois corporation that conducts AGFC's business in Illinois. It was the manager of one of AGFI's branch offices who wrote the misleading letter to Emery. The individual defendants, John Does 1 through 10, are alleged to be "the individuals responsible for devising the policies used [by] each" of the defendants. The holding company is alleged to have delegated responsibility for the preparation and approval of solicitations to AGFC, which "devised the [fraudulent] scheme and directed its subsidiaries [presumably including AGFI] to implement it." The RICO enterprise, variously described, is essentially the corporate group; and AGFC and the Does are alleged to have conducted the affairs of the enterprise through a pattern of mail fraud.
 
 
 8
 Begin with AGFC. Its alleged act of devising a fraudulent solicitation that AGFI, its Illinois subsidiary (and perhaps its other subsidiaries in other states), distributed cannot be regarded as conducting the business of the AGF group through a pattern of fraud. Whether AGFC operated through divisions, which would make the branch manager of AGFI who mailed the misleading letter to Emery an employee of AGFC and would therefore preclude a finding of a RICO enterprise on anyone's view, Fitzgerald v. Chrysler Corp., supra, 116 F.3d at 226; Discon, Inc. v. NYNEX Corp., 93 F.3d 1055, 1063 (2d Cir.1996), or through wholly owned subsidiaries is a difference unrelated to any goal or policy of RICO. Id. at 1064; Fitzgerald v. Chrysler Corp., supra, 116 F.3d at 227; Compagnie De Reassurance D'Ile De France v. New England Reinsurance Corp., 57 F.3d 56, 92 (1st Cir.1995). The parent would be exercising power that is inherent in its ownership of wholly owned subsidiaries. There is no allegation that by using subsidiaries rather than divisions the AGF group somehow made it easier to commit or conceal the fraud of which the plaintiff complains.
 
 
 9
 It would be different if as in Haroco, Inc. v. American National Bank & Trust Co., 747 F.2d 384 (7th Cir.1984), aff'd. on other grounds, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985), criminals took over a corporate subsidiary which then managed to wrest control of the parent and use the parent as an instrument for further criminal activities. That would be a case of magnifying the powers of the criminal by seizing control of a legitimate organization. Which brings us to John Does 1 through 10. The Third Circuit, relying in part on our decision in McCullough v. Suter, 757 F.2d 142, 144 (7th Cir.1985), has held that an allegation that corporate officers or employees are using their corporation to perpetrate the frauds or other predicate acts satisfies the "conduct the affairs through" requirement. Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., 46 F.3d 258, 267-69 (3d Cir.1995). However, it is one thing to allege that criminals are using a corporation to commit crimes, a natural meaning to impress on the statutory language of conducting an enterprise's affairs through a pattern of racketeering activity, and another to assert merely that since the corporation's unlawful scheme must have been hatched by someone connected to the corporation, the scheme (provided it satisfies the statute's pattern requirement) violates RICO. Corporations can act only through natural persons, so the approach that we are criticizing (and that we do not attribute to the Third Circuit, since Jaguar Cars was a case in which the defendants controlled the corporation, see 46 F.3d at 261) would eliminate any separate function for the "conducts the affairs of through" language of the statute if the perpetrator is a firm. If the scheme is actually hatched or directed by the board of directors or some other controlling group, whether the control is de facto or de jure, it will come close enough to the paradigmatic RICO case to pass muster under the "family resemblance" test that we applied in the Fitzgerald case. That is the teaching of Jaguar Cars but is not alleged here. The plaintiffs' inability to identify any actual corporate officers or employees as responsible parties shows that she is trying to truncate the statute in the manner that strikes us as inadmissible.
 
 
 10
 We are mindful of the cases that hold or imply that the RICO defendant need not be an owner or even a member of top management in order to be guilty of conducting the affairs of an enterprise through a pattern of racketeering activity, and even more clearly to be guilty of participating in such conducting, which is also a violation. Reves v. Ernst & Young, 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993); MCM Partners, Inc. v. Andrews-Bartlett & Associates, Inc., 62 F.3d 967, 977-79 (7th Cir.1995); United States v. Oreto, 37 F.3d 739, 750-51 (1st Cir.1994). But those cases are different. In Reves the issue was how much involvement in a corporation's affairs a corporate outsider (an accounting firm, in that case) had to have in order to be deemed a participant in the conduct of those affairs. In MCM and Oreto the "enterprise" was not a corporation or other normal firm but an "association in fact," which is a polite name for a criminal gang or ring. None of the cases adopts the position for which the plaintiff here is contending--that if a corporation engages in a pattern of racketeering activity, RICO liability falls on whoever in the corporation committed the acts constituting the illegal activity. That position would treat the corporation as an enterprise distinct from its employees, which the cases that we cited earlier forbid.
 
 
 11
 What is distinct from the corporation is the people who control it (or perhaps control even just a part of it), for we often speak of a "control group" as something different from the corporation controlled; and there is no contradiction or even strain in talking about the "owner" of a "corporation" as separate entities. And so the result in Jaguar Cars was correct. But in this case the individual defendants are not alleged to control the corporation alleged to have committed the frauds that constitute the RICO violation, or a corporate division or other identifiable branch or unit that they somehow carved out from the legitimate corporate hierarchy and made their own little bailiwick. They are alleged merely to have devised the fraud--they might, for all that appears, be marketing personnel whose job is to think up, but not direct or implement, clever ideas for getting more loans. There can be no corporate fraud without a deviser, that is, without a human inventor, so that if "devisers" are RICO violators there would be a RICO violation whenever a corporation engaged in a pattern of racketeering activity--and thus automatically--even though the statute makes the conduct of or participation in the corporation's affairs a separate element of liability.
 
 
 12
 AFFIRMED.