### Stephen LATHROP, Plaintiff,

v.

### JUNEAU & ASSOCIATES, INC. P.C., Joe Juneau, individually and in his official capacity as City Engineer of Granite City, Illinois, Ed Juneau, Charlie Juneau, Dan Brown, individually and in his official capacity as Economic Director of Granite City, Illinois, Ronald Selph, individually and in his official capacity as Mayor of Granite City, Illinois, Mark Spengler, individually and in his official capacity as City Attorney of Granite City, Illinois, Granite City of Illinois, and Other Unnamed Persons, Defendants.

### No. 03–CV–0194–DRH.

United States District Court, S.D. Illinois.

Feb. 11, 2004.

Stephen Lathrop, pro se, Granite City, IL, for Plaintiff.

John L. McMullin, III, Holly C. Turner, Brown & James, Stephen R. Kaufmann, Burroughs, Hepler et al., Edwardsville, IL, for Defendants.

## MEMORANDUM AND ORDER

HERNDON, District Judge.

### I. *Introduction*

Before the Court is the motion to dismiss, motion to strike, or, in the alternative, for more definite statement, submitted by Defendants Juneau & Associates, Inc. P.C., Joe Juneau, Ed Juneau, and Charlie Juneau (Doc. 4). *Pro se* Plaintiff Stephen Lathrop is a contractor who apparently had a construction project approved by Granite City's Aldermen and has brought a claim alleging that Defendants wrongfully prevented the completion of his agreement because it would have interfered with another construction project in which all named Defendants had a legal or illegal interest.

### II. *Background*

Plaintiff alleges that Juneau & Associates and its owners, Joe Juneau, Ed Juneau, and Charlie Juneau, overpriced Granite City for construction projects that they obtained by bribing city officials with kickbacks (Complaint ¶¶ 30–31). Plaintiff claims that Defendants' kickback scheme injured him when Defendants purposefully undermined his pending Dobrey Slough construction agreement with Granite City because of its conflicts with one of Juneau & Associates' construction projects.

The following are the main individuals (parties) in this suit:

1. Plaintiff Stephen Lathrop is a contractor in Granite City, Illinois.

2. Defendant Juneau & Associates is a private engineering firm contracted to serve as city engineer for several municipalities.

3. Defendant Joe Juneau is Granite City's civil engineer and an owner of Juneau & Associates.

4. Defendants Ed Juneau and Charlie Juneau are owners of Juneau & Associates.

5. Defendant Dan Brown is Economic Advisor for Granite City.

6. Defendant Ronald Selph is Mayor of Granite City.

7. Defendant Mark Spengler is City Attorney for Granite City.

For the sake of clarity, the Defendants Juneau & Associates, Joe Juneau, Ed Juneau, and Charlie Juneau will be referred to collectively as the "Juneau Defendants." The Defendants the City of Granite City, Dan Brown, Ronald Selph, and Mark Spengler will be referred to collectively as the "Granite City Defendants."

Lathrop's complaint brings these claims against Defendants (Doc. 1):

1. RICO violation of 18 U.S.C. § 1962(c)—premised on federal predicate acts of bribery, wire fraud, mail fraud, and other federal laws; also premised on state predicate acts of bribery, defamation, and other Illinois laws (¶¶ 83–88);

2. RICO violation of 18 U.S.C. § 1962(c) and (d)—same predicate acts as above (¶¶ 89–94);

3. RICO violation of 18 U.S.C. § 1962(a) and (d)—same predicate acts as above (¶¶ 95–100);

4. RICO violation of 18 U.S.C. § 1962(b) and (d)—same predicate acts as above plus fraud under 18 U.S.C. 1342 and "related fraudulent defamatory under U.S.C. 1961(1), 1961(5), and 1962(b)" (¶¶ 101–106);

5. Tortious interference with prospective business relations (¶¶ 107–109);

6. Civil Conspiracy (¶¶ 111–117);

7. Violation of state and federal freedom of information acts (¶¶ 118–120); and

8. Violation of state and federal anti-trust laws (¶¶ 121–126).

Plaintiff proposed a construction project that would have provided flood control measures and a housing development for the Dobrey Slough area in Granite City, Illinois (Complaint ¶ 32). During several meetings from 1998 until the spring of 2000, Plaintiff met with Alderman Kim Hess and Defendants Dan Brown (Economic Advisor) and Joe Juneau (City Engineer) to discuss the need for implementing his flood control measures for Dobrey Slough (Complaint ¶ 32, 33). At the meeting, Plaintiff also explained that Juneau & Associates' construction project at the nearby DonnaLynne subdivision would worsen Dobrey Slough's flooding problems (Complaint ¶ 33). Plaintiff notes in his complaint that the US–Army Corps of

Engineers eventually determined that the drainage plan of Juneau & Associates' DonnaLynne project was inadequate when it eventually forced Granite City to construct a $1.8 million drainpipe to Horseshoe Lake from the DonnaLynne subdivision (Complaint ¶ 75).

In the spring of 2000, Granite City Aldermen held an Economics and Downtown Planning Committee Meeting at which Defendant Joe Juneau presented the DonnaLynne proposal (Complaint ¶ 34). Mayor Ronald Selph informed the Aldermen that he had already made an agreement with Juneau & Associates and sought only the Aldermen's authorization to sign the agreement (Complaint ¶ 34). Plaintiff claims the Aldermen never saw the actual agreement but instead relied on the Mayor's misrepresentation that the funds for the project would be repaid within seven years (Complaint ¶¶ 34–35). According to Plaintiff's complaint, the DonnaLynne agreement actually stipulated that the project would cost $800,000 for which the city would not be reimbursed (Complaint ¶¶ 34–35). Plaintiff asserts that Keith Jensen, then city attorney, was not present at the meeting, was unaware of the DonnaLynne subdivision plan, and was denied access to the written agreement by Defendant Mark Spengler (another city attorney)(Complaint ¶ 38). Plaintiff claims several state laws and local ordinances were broken by the approval process and implementation of Juneau & Associates' DonnaLynne subdivision project (Complaint ¶ 39).[1]

In September of 2000, Plaintiff and his prospective backer Don Balsters agreed to seek approval of Plaintiff's Dobrey Slough project (Complaint ¶ 40). Apparently, Plaintiff and Balsters made some progress in negotiations with the Granite City Economic Committee, but Balsters withdrew because of some statements made by Defendants Dan Brown and Joe Juneau (Complaint ¶¶ 40–41). Balsters went with Defendants Dan Brown and Joe Juneau to Plaintiff's house to tell Plaintiff of his withdrawal (*Id.*). Plaintiff claims that a witness heard Dan Brown state that he had just "Knocked the legs out from under Lathrop's project. We can't let him compete with our DonnaLynne subdivision" (Complaint ¶ 42). Plaintiff claims that Defendants made false and groundless statements about him to governmental representatives, agencies, business partners, and financiers to prevent Plaintiff's Dobrey Slough plan from being accepted (Complaint ¶ 36). Specifically, Plaintiff claims that Defendants referred to him as being "shady" (Complaint ¶ 37), not "know[ing] what he is doing" (Complaint ¶ 36), and being "a substandard builder"(Complaint ¶ 36).

On September 10, 2001, Plaintiff found another financial backer, Kent Kehr (Complaint ¶ 43). Apparently, Plaintiff had formed a "pre-annexation agreement" with Granite City in January 1998. On December 4, 2001, the Granite City Economic Committee "authorize[d] the Mayor to re-sign the Agreement" (Complaint ¶ 45). The Committee "seemed fine" with Plaintiff's written proposal at their March 19, 2002, meeting at which financier Kehr requested that the city reacquire 30+ acres given to N & W Railroad (Complaint ¶ 46). It appears Plaintiff's plan was approved (Complaint ¶ 47). However, on March 26, 2002, Defendant Dan Brown as City Economic Director told Kehr by telephone that the project would not be accepted (Complaint ¶ 47). Plaintiff has failed to include the reasons that Dan Brown mentioned to Kehr for why the project would not occur. Plaintiff claims that a witness heard Dan Brown bragging about the fact that he had once again stopped Plaintiff's financial backing and protected Juneau's DonnaLynne project (Complaint ¶ 48).

Beginning on April 9, 2001, Plaintiff began to investigate Juneau & Associates' DonnaLynne project. Plaintiff made requests of certain documents and received a copy of the

---

1. Plaintiff states the following laws and regulations were violated: "This DonnaLynne Subdivision: (a) was never brought before Planning and Zoning, (b) never had a Public Hearing, (c) the land was not advertised for sale to the general public, (d) funds for the sewer system were not placed in escrow with the Madison County Special Sewer District, (e) the Special Sewer District was not notified of construction [sic] (f) Sewer District inspections were not called for.... [sic] (g) channeling—diverting storm water where it had never drained before. [sic] (f) [sic] concealing a family cemetery, which the neighbors were aware of."

contract agreement establishing Juneau & Associates' DonnaLynne. project (Complaint ¶¶ 53, 54). In his complaint, Plaintiff claims he did not receive other requested documents but fails to mention which documents were not produced.

On April 16, 2002, Plaintiff and his attorney addressed the Granite City finance committee. Plaintiff informed the committee that Defendants had blocked the agreement for the approved Dobrey Slough project (Complaint ¶ 55). Plaintiff claims that the finance committee questioned Defendant Dan Brown on his interference with the plans and then unanimously passed a resolution to have the City Attorney work out a settlement agreement with Plaintiff to avoid litigation of the matter (Complaint ¶ 56). At the same meeting, Plaintiff informed the committee that the contract agreement for Juneau & Associates' plan did not stipulate for the repayment of $700,000–800,000 even though the committee had been informed that the plan would cost nothing (Complaint ¶¶ 57, 58).

Plaintiff also notes other facts. The title to the land for Juneau & Associates' Donna-Lynne project was once held by Defendant City Attorney Spengler (Complaint ¶ 59). Plaintiff then began seeking additional information concerning the DonnaLynne project but was denied access to this information at the direction of Spengler who claimed the documents could not be released because of pending litigation although no litigation was then pending (Complaint ¶¶ 60–68).

Plaintiff has designated two RICO enterprises based on the facts above: (1) the "Juneau–Granite City Engineering Enterprise" that is composed of all defendants; and (2) the "Juneau Enterprise" that is comprised of Juneau & Associates and its employees (Complaint ¶¶ 17–18).

### III. *Juneau Defendants' Motions*

The Juneau Defendants have filed a motion to dismiss, motion to strike, or, in the alternative, for more definite statement (Doc. 4). Although the Juneau Defendants fail to state under which rule they move to dismiss, the Court will assume for each argument in the dismissal section below (sec-

tion III.A), that they seek dismissal based on FED. R. CIV. P. 12(b)(6) except when FED. R. CIV. P. 9(b) is specifically raised. The Court addresses each portion of the Juneau Defendants' motion in order. The Court has treated these motions strictly as motions to dismiss and has not considered any of the parties' affidavits.

### A. *Dismissal*

RULE 12(b)(6) allows a party to move for dismissal based on "failure to state a claim upon which relief can be granted." In ruling on a motion to dismiss, the court "must accept well pled allegations of the complaint as true. In addition, the court must view these allegations in the light most favorable to the plaintiff." *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir.1987). Although a complaint is generally not required to contain a detailed outline of the claim's basis, it nevertheless "must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Car Carriers, Inc. v. Ford Motor, Co.*, 745 F.2d 1101, 1106 (7th Cir.1984).

RULE 9(b) allows a party to move for dismissal of a fraud or mistake when "the circumstances constituting fraud or mistake [are not] stated with particularity." However, the Seventh Circuit has emphasized the flexibility of RULE 9(b) when the pleading party is unable "to obtain essential information without pretrial discovery." *Emery v. American General Finance, Inc.*, 134 F.3d 1321, 1323 (7th Cir.1998).

First, the Juneau Defendants argue that only Defendant Dan Brown's alleged conversation with Mr. Kehr supports Lathrop's cause of action and that Brown's statements are permissible under Illinois law. In Dan Brown's alleged conversation with Plaintiff's financier Mr. Kehr, Plaintiff claims Brown told Kehr he did not support Plaintiff's plan and would require Kehr to indicate "a particular user he had in mind for a particular site" (Doc. 4, 5). The Juneau Defendants argue that this statement cannot support Plaintiff's action since it was simply Brown's compliance with 65 ILCS 5/11–74.4–2(n) and (I)

(cited as 65 ILCS 5/11–74.4–1(n) in the supporting memorandum (Doc. 5))(Doc. 4).

The Court denies the Juneau Defendants' request to dismiss the complaint on this ground. First, Defendants have cited statutory subsections that do not exist [65 ILCS 5/11–74.4–2(n) and (I) in (Doc. 4); noted also as 65 ILCS 5/11–74.4–1(n) and (I) in (Doc. 5)]. The Juneau Defendants' argument is incognizable given the lack of a reference to an existing statutory subsection. Second, Plaintiff has alleged numerous events that could form the basis of his suit, e.g., (1) denial of government documents when Juneau was a municipal contractor; (2) business interference based on other conversations with Kehr and Plaintiff's first financier; (3) the Juneau Defendants alleged bribing of the government to secure a city contract that prevented Plaintiff's "pre-annexation agreement" from being realized.

Second, the Juneau Defendants argue without citation to legal authority that neither an Illinois nor a federal Freedom of Information Act (FOIA) claim can be maintained against them because they are "not municipal or governmental bodies" (Doc. 4, 5).

 The Court denies the Juneau Defendants' motion to dismiss the Illinois FOIA claim and dismisses the federal FOIA claim. First, the Illinois FOIA requires "public bodies" to produce documents. 5 ILCS 140/3(a).[2] Plaintiff has alleged that Joe Juneau or Juneau & Associates held the public position of "city engineer" (¶ 60). It is unclear whether the Juneau Defendants are "public bodies" especially since the Juneau Defendants have neither referenced the correct statutory term nor cited case law showing municipal employees not to be liable. Second, the Federal FOIA does not apply to state governments. 5 U.S.C. §§ 551, 552; see, e.g., Davidson v. Georgia, 622 F.2d 895,

897 (5th Cir.1980)(stating "the Freedom of Information Act has no application to state governments"). In this case, the Juneau Defendants are alleged to have positions in the municipal government, not the federal government. Therefore, the Court denies the request to dismiss Plaintiff's Illinois FOIA claims and dismisses Plaintiff's Federal FOIA claims.

 Third, the Juneau Defendants move for dismissal Lathrop's RICO claims for failure to comply with FED. R. CIV. P. 9(b). They cite Murr Plumbing, Inc. v. Scherer Brothers Financial Services Co., 48 F.3d 1066 (8th Cir.1995).

The Court denies the Juneau Defendants' motion to dismiss based on RULE 9(b). RULE 9(b) states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." However, "[a] pro se complaint is held to 'less stringent standards than formal pleadings drafted by lawyers,' and can be dismissed for failure to state a claim only if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Henderson v. Sheahan, 196 F.3d 839, 845–46 (7th Cir.1999)(quoting, respectively, Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) and Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976))(internal citations omitted). In addition, when a plaintiff has restricted access to information, a court is warranted in relaxing the restrictions of RULE 9(b) and awaiting the plaintiff's access to the facts. Corley v. Rosewood Care Center, Inc. of Peoria, 142 F.3d 1041, 1050–51 (7th Cir.1998); see also Rotella v. Wood, 528 U.S. 549, 560, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000)(citing with approval the Seventh Circuit's decision in Corley); Emery v. American General Finance, Inc., 134 F.3d 1321, 1323 (7th Cir.1998). In

---

**2.** 5 ILCS 140/2(a) states: "'Public body' means any legislative, executive, administrative, or advisory bodies of the State, state universities and colleges, counties, townships, cities, villages, incorporated towns, school districts and all other municipal corporations, boards, bureaus, committees, or commissions of this State, *any subsidiary bodies* of any of the foregoing including but not limited to committees and subcommittees

which are supported in whole or in part by tax revenue, or which expend tax revenue, and a School Finance Authority created under Article 1E of the School Code. 'Public body' does not include a child death review team or the Illinois Child Death Review Teams Executive Council established under the Child Death Review Team Act" (emphasis added).

this case, Plaintiff is *pro se* and alleges that he has been denied access to government documents that could support his claim. Furthermore, Plaintiff has alleged enough facts for Defendants to be aware of the claims against which they must defend. Therefore, Plaintiff's complaint is sufficient to withstand the requirements of RULE 9(b) at this time. The Court grants Plaintiff leave to file an amended complaint and strongly urges Plaintiff to seek counsel to assist in the preparation of the complaint.

■ Finally, the Juneau Defendants move to dismiss the RICO claims against the Defendant Juneau & Associates in regard to the "Juneau Enterprise" since under RICO an entity designated as an "enterprise" cannot also be a "person" against which a claim is brought. Defendants cite *Arzuaga–Collazo v. Oriental Federal Savings Bank,* 913 F.2d 5 (1st Cir.1990).

■ The Court determines that Plaintiff's claim based on 18 U.S.C. § 1962(c) against the Defendant Juneau & Associates based on its participation in the "Juneau Enterprise" must be dismissed. The Seventh Circuit has held that a claim based on 18 U.S.C. § 1962(c) requires that the "person" and "enterprise" be distinct from each other. *Haroco, Inc. v. American Nat'l Bank & Trust Co. of Chicago,* 747 F.2d 384, 400 (7th Cir.1984). In this case, Plaintiff designates two RICO enterprises: the "Juneau–Granite City Engineering Enterprise" and the "Juneau Enterprise." According to Plaintiff, "[t]he Juneau Enterprise consists solely of Juneau & Associates, Inc. P.C." (¶ 17). Since Juneau & Associates is the same "person" as the "enterprise" in the "Juneau Enterprise," Plaintiff cannot assert a section 1962(c) claim against Juneau & Associates in relation to the "Juneau Enterprise." Therefore, no section 1962(c) exists against Juneau & Associates in regard to the "Juneau Enterprise."

The Court determines that Plaintiff can bring claims based on 18 U.S.C. § 1962(a) and (b) against the Defendant Juneau & Associates based on its participation in the "Juneau Enterprise." With regard to RICO suits under 18 U.S.C. § 1962(a) and (b), a "person" can be the same entity as the "enterprise" given the language of these subsec-

tions. *Masi v. Ford City Bank & Trust Co.,* 779 F.2d 397, 401 (7th Cir.1986)(determining that the language of section 1962(a), which for these purposes is the same as section 1962(b), permits a RICO plaintiff to claim that a "person" is the same entity as the "enterprise"). Therefore, Plaintiff can bring non-section 1962(c) claims against the Defendant Juneau & Associates with regard to the "Juneau Enterprise."

### B. Additional Requests

The Juneau Defendants request the Court to strike pursuant to FED. R. CIV. P. 12(f) the following paragraphs from Lathrop's complaint: 1, 2, 15, 16, 18, 20, 29, 30, 31, 36, 38, 39, 41, 42, 48, 49, 57, 58, 59, 62, 74, 75, 77, 79, 87, 93, 99, 105, and 113 (Doc. 4). The Juneau Defendants also request the Court to strike "Appendix A"(an article from *Ideas on Liberty*) from Lathrop's complaint (Doc. 4).

The Court grants in part and denies in part the Juneau Defendants' motion to strike. RULE 12(f) allows a court to strike "any redundant, immaterial, impertinent, or scandalous matter." The Court strikes the following "immaterial" paragraphs: 1, 2, 30, 31, 74, 77, and 79. Consistent with the Court's ruling dismissing the section 1962(c) claim against the Defendant Juneau & Associates with regard to the "Juneau Enterprise," the Court strikes the phrase "and the Juneau Enterprise" from paragraph 87—no other Defendants have been named as participants in the "Juneau Enterprise" such that a section 1962(c) claim could be brought with regard to the "Juneau Enterprise." Also, the Court strikes "Appendix A" to Lathrop's complaint as "immaterial."

Although it is unclear what remedy they seek, the Juneau Defendants state, "In the Plaintiff's Eighth Claim for Relief, he attempts to set forth some sort of 'antitrust' violation cause of action. Certainly, nothing is pled that remotely resembles a legally sufficient cause of action" (Doc. 4).

The Court determines that Plaintiff has failed to state sufficiently a cause of action to support an antitrust claim. Therefore, the Court requires Plaintiff provide a more definite statement as to the legal and factual

bases that support his federal and state antitrust claims.

The Juneau Defendants argue that Plaintiff has failed to state sufficiently his damages (Doc. 4).

The Court determines that Plaintiff has sufficiently notified Defendants of his damages. While Plaintiff has not provided a specific figure, Plaintiff has indicated that he seeks compensation for damages to his business.

The Juneau Defendants claim that Plaintiff has failed to assert a cause of action for "tortuous [sic] interference with a business." Defendants argue that Plaintiff's facts do not show any of the required elements for a claim based on tortious interference (Doc. 4).

▇▇▇ The Court determines that Plaintiff has sufficiently stated the required elements for a tortious interference claim. In Illinois, "[r]ecovery in an action for interference with a prospective economic advantage arising out of a business relationship requires that: '(1) the plaintiff has a valid business expectancy; (2) the defendant knows of the expectancy; (3) the defendant intentionally interferes and prevents the realization of the business relationship; and (4) the defendant's interference actually damages the plaintiff.'" *Stefani v. Baird & Warner, Inc.,* 157 Ill.App.3d 167, 175, 109 Ill.Dec. 444, 510 N.E.2d 65 (1987)(quoting *Bank Computer Network Corp. v. Continental Illinois Nat'l Bank & Trust Co.,* 110 Ill.App.3d 492, 500, 66 Ill.Dec. 160, 442 N.E.2d 586 (1982)). In this case, Plaintiff has stated that (1) he had a pre-annexation agreement with the city; (2) the Juneau Defendants knew about it; (3) the Juneau Defendants intentionally interfered by dissuading two financial backers and having Granite City executive officers contravene the City Council's order; and (4) his business suffered general damages. Plaintiff has sufficiently asserted a claim for tortious interference with a business.

The Juneau Defendants argue that Plaintiff has not stated facts that establish RICO's requirements of a(1) predicate act, (2) "a scheme to defraud" for mail and wire fraud purposes, or (3) a pattern of the activity (Doc. 4, 5). The Juneau Defendants cite *U.S.*

*v. Goodman,* 984 F.2d 235 (8th Cir.1993) and *Diamonds Plus, Inc. v. Kolber,* 960 F.2d 765 (8th Cir.1992). Again, the Juneau Defendants fail to request any specific relief in regard to this deficiency.

The Court assumes the Juneau Defendants are seeking dismissal based on RULE 9(b) and grants Lathrop leave to amend his complaint to state facts that may establish RICO's requirements of a predicate act, "a scheme to defraud," or a pattern of the activity. RULE 9(b) states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." However, "[a] *pro se* complaint is held to 'less stringent standards than formal pleadings drafted by lawyers,' and can be dismissed for failure to state a claim only if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Henderson v. Sheahan,* 196 F.3d 839, 845–46 (7th Cir.1999)(quoting, respectively, *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) and *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976))(internal citations omitted). In addition, when a plaintiff has restricted access to information, a court is warranted in relaxing the restrictions of RULE 9(b) and awaiting the plaintiff's access to the facts. *Corley v. Rosewood Care Center, Inc. of Peoria,* 142 F.3d 1041, 1050–51 (7th Cir.1998)(relaxing particularity requirements of RULE 9(b) for mail and wire fraud allegations where RICO plaintiff's complaint (1) stated generally the content of fraudulent communications; (2) failed to allege the time and place of the communications; and (3) stated that Defendants possessed the specific information needed to complete RULE 9(b)'s specificity requirements); *see also Rotella v. Wood,* 528 U.S. 549, 560, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000)(citing with approval the Seventh Circuit's decision in *Corley*); *Emery v. American General Finance, Inc.,* 134 F.3d 1321, 1323 (7th Cir.1998). In this case, Plaintiff is *pro se* and alleges that he has been denied access to government documents that could support his claim. Therefore, Plaintiff's complaint is sufficient to withstand the requirements of RULE 9(b) at this time. The Court grants Plaintiff leave to file an amended complaint and strongly urges Plaintiff to

seek counsel to assist in the preparation of the complaint.

The Court grants Lathrop leave until April 30, 2004, to amend his complaint with regard to his claims that are currently unsatisfactory with regard to RULE 9(b). A court must allow a plaintiff pretrial discovery to obtain facts needed to assert a fraud claim in compliance with RULE 9(b) when no other opportunity to obtain information has been afforded him. *See, e.g., Emery v. American General Finance, Inc.,* 134 F.3d 1321, 1323 (7th Cir.1998)(noting "[w]e don't want to create a Catch–22 situation in which a complaint is dismissed because of the plaintiff's inability to obtain essential information without pretrial discovery ... that she could not conduct before filing the complaint"). In his complaint, Plaintiff claims that he has been denied access to all government documents with the exception of the DonnaLynne agreement and the title to the land for the DonnaLynne project. Plaintiff must be granted an opportunity to obtain facts through the discovery process since access to government documents was denied to him prior to the filing of his complaint.

### IV. *Conclusion*

The Court **GRANTS** the Juneau Defendants' motion to dismiss Plaintiff's federal FOIA claim (Doc. 4). The Court **GRANTS** the Juneau Defendants' motion to dismiss Plaintiff's 18 U.S.C. § 1862(c) claim against Juneau & Associates in regard to the "Juneau & Enterprise" (Doc. 4). The Court **DENIES** all the other bases for dismissal submitted by the Juneau Defendants (Doc. 4, 5). The Court **GRANTS in part** and **DENIES in part** the Juneau Defendants' motion to strike certain portions of Plaintiff's complaint (Doc. 4, 5). The Court **GRANTS** Plaintiff **LEAVE** until *April 30, 2004,* to file an amended complaint with regard to his claims that have been shown by Defendants to be deficient under RULE 9(b). The Court **STRONGLY URGES** Plaintiff to retain counsel.

**IT IS SO ORDERED.**